THE STATE OF OHIO, APPELLEE, *v.* JOHNSON, APPELLANT.

[Cite as *State v. Johnson* (1994), 71 Ohio St.3d 332.]

(No. 92–2628—Submitted November 29, 1994—Decided December 23, 1994.)

*Lynn C. Slaby,* Summit County Prosecuting Attorney, and *Phillip Bogdanoff,* Assistant Prosecuting Attorney, for appellee.

*David H. Bodiker,* Ohio Public Defender, *Jane P. Perry* and *Randy D. Ashburn,* Assistant Public Defenders, for appellant.

_____

A. WILLIAM SWEENEY, J. Upon a careful and thorough review of the record in this case, we are convinced that the number of errors during the guilt phase of defendant's capital trial deprived him of his constitutional due process right to a fair trial. Therefore, for the reasons that follow, we reverse the judgment of the court of appeals upholding defendant's convictions, and remand the cause to the court of common pleas for further proceedings.

I

In his first proposition of law, defendant contends that his prior conviction for second degree murder in Florida cannot be the basis for convicting him of an R.C. 2929.04(A)(5) death specification.

In 1988, defendant pled guilty to and was convicted in a Florida court of a charge of "murder in the second degree," Fla.Stat.Ann. 782.04(2), for the 1984 beating death of Denise Hutchinson. Based on the second-degree murder conviction, the jury in the cause *sub judice* convicted defendant of a death specification pursuant to R.C. 2929.04(A)(5), which allows the death penalty if, "[p]rior to the offense at bar, the offender was convicted of an offense an essential element of which was the purposeful killing of or attempt to kill another * * *."

R.C. 2901.22(A) states: "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."

On the other hand, Fla.Stat.Ann. 782.04(2) provided: "The unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a *depraved mind* regardless of human life, although *without any premeditated design* to effect the death of any particular individual, is murder in the second degree * * *." (Emphasis added.) Under this provision, Florida equates a "depraved mind" with "malice," defined as "ill-will, hatred, spite, or an evil intent" toward the victim. *State v. Ellison* (Fla.1990), 561 So.2d 576.

Defendant submits that the Florida statute in issue does not require a "purposeful killing." We agree. Ill will, hatred, spite, and evil intent do not connote specific purpose to kill, and Florida courts have not required the state to prove, in second-degree murder cases, that the defendant meant to kill the victim. Rather, "[s]econd-degree murder convictions have consistently been affirmed when the unintended death resulted from intentional actions toward or directed at a particular victim out of ill will, spite or malice." *Ellison v. State* (Fla.App. 1989), 547 So.2d 1003, 1006 (citing cases), affirmed in part, *State v. Ellison, supra.*

A review of several other precedents handed down in Florida support this conclusion. For example, in *State v. Bryan* (Fla.1973), 287 So.2d 73, the defendant pistol-whipped the victim; the pistol went off and killed the victim. The Florida Supreme Court upheld a second-degree murder conviction without requiring proof of homicidal intent. Similarly, in *Dellinger v. State* (Fla.App. 1986), 495 So.2d 197 (*en banc*), the defendant "pointed a rifle at his wife without knowing (and thus without caring) whether or not it was loaded, and then deliberately pulled the trigger, killing her." From that, the jury could "infer Dellinger had a 'depraved mind regardless of human life'." 495 So.2d at 198–199.

In *Owen v. State* (Fla.App.1983), 441 So.2d 1111, the defendant was acquitted of first-degree murder but, despite his claim of intoxication, was convicted of second-degree murder. In Florida, "[v]oluntary intoxication is an absolute

defense to any crime requiring specific intent," *id.* at 1114, fn. 6, and the jury apparently found voluntary intoxication. *Id.* at 1114. It follows, therefore, that specific intent is not essential to support a second-degree murder charge in Florida. See, also, *Gentry v. State* (Fla.1983), 437 So.2d 1097.

The state argues that "purpose" under the language of R.C. 2901.22(A) set forth above is not limited to specific intent. In our view, however, this provision does not apply to the Florida statute in issue. The gist of second-degree murder in Florida is not merely "conduct of a certain nature"; the conduct must be accompanied by "ill-will, hatred, spite, or an evil intent." *State v. Ellison, supra,* 561 So.2d 576. Thus, we believe an "intention to engage in conduct of [a certain] nature" under Ohio law would not satisfy the "depraved mind" element of Fla.Stat.Ann. 782.04(2). Therefore, we find that the 1984 Florida conviction of second-degree murder was insufficient to prove the R.C. 2929.04(A)(5) aggravating circumstance. Accordingly, we sustain defendant's first proposition of law.

## II

### A

In his seventh proposition of law, defendant contends that he was denied a fair trial by the admission of inadmissible hearsay statements purportedly made by the victim.

Prior to her death, Susan Brunst told several people that her brother, the defendant, had tried to rape her in November or December 1989. The trial court permitted, over defense objections, four witnesses to repeat these statements. The state argued and the trial court apparently agreed that the victim's statements were admissible as statements of state of mind under Evid.R. 803(3) or as excited utterances under Evid.R. 803(2).

In *State v. Huertas* (1990), 51 Ohio St.3d 22, 31, 553 N.E.2d 1058, 1068, this court held as follows:

"To be admissible under Evid.R. 803(2) as an excited utterance, a statement must concern 'some occurrence startling enough to produce a nervous excitement in the declarant,' which occurrence the declarant had an opportunity to observe, and must be made 'before there had been time for such nervous excitement to lose a domination over his reflective faculties. * * *' *Potter v. Baker* (1955), 162 Ohio St. 488, 55 O.O. 389, 124 N.E.2d 140, paragraph two of the syllabus."

Ron Cook testified that on a weekend in 1989 after Thanksgiving, he arrived at the victim's home to find her "noticeably upset." Cook questioned her, and she told him that defendant had tried to rape her, apparently "within minutes" of Cook's arrival, by trying to force her into the bedroom at knifepoint. Brunst resisted and was finally able to "talk him out of it."

In our view, the testimony of Cook qualifies as an exception to the hearsay rule as an excited utterance under the standard enunciated in *Potter, supra.* Cook testified that Brunst was "upset," and that her statement to him was made within minutes of the incident. Furthermore, it appears reasonable to conclude from the record that these statements were made in a state of nervous excitement, especially given the shocking nature of defendant's alleged actions. Cf. *State v. Taylor* (1993), 66 Ohio St.3d 295, 303, 612 N.E.2d 316, 322. Moreover, even though Cook elicited Brunst's statements by questioning her, we do not believe his questions were coercive or leading. Nor do we believe Cook's questions destroyed "the domination of the nervous excitement over [Brunst's] reflective faculties." *State v. Wallace* (1988), 37 Ohio St.3d 87, 524 N.E.2d 466, paragraph two of the syllabus. In any event, we believe that the trial court's admission of Cook's testimony in this realm does not amount to an abuse of discretion. See *State v. Jenkins* (1984), 15 Ohio St.3d 164, 222, 15 OBR 311, 361, 473 N.E.2d 264, 313.

### B

Three other witnesses also repeated the victim's allegation as testified by Cook. The state does not argue before this court that these statements were admissible, but instead argues harmless error. The record indicates that the victim's daughter Cynthia related two such statements, but it is not clear at what time the victim made the first of these. Cynthia, however, did not testify that her mother seemed excited or upset; rather, she testified that her mother told her the story for a reason (*i.e.,* so she would stay away from defendant), which would indicate reflection. The second time the victim told Cynthia about the rape attempt was about a week after the first time.

The victim told her friend Loretta Hopkins virtually the same story "a couple months" after the attempted rape. Like Cynthia, Hopkins did not testify as to the victim's emotional state, but did state that the victim told her the story for a reason.

The victim also told her sister, June Jones, about the attempted rape "[a] few days" after it happened. The victim "was very upset," but Jones did not say she was agitated, excited, or nervous. Cf. *Taylor, supra* ("upset" insufficient where declarant made statements several hours after allegedly startling event).

In our view, the trial judge abused his discretion in admitting the testimony of Jones, Hopkins, and Cynthia Brunst. There was no evidence that Susan Brunst spoke to these witnesses under the domination of nervous excitement. In all three cases, circumstances indicated that Brunst had the opportunity to reflect. See, *e.g., State v. Justice* (1994), 92 Ohio App.3d 740, 748, 637 N.E.2d 85, 90: "A statement naturally becomes more reflective with repetition."

Moreover, the state's argument that any error in admitting Jones's, Hopkins's or Cynthia Brunst's testimony was harmless because their testimony was cumulative to Cook's is wholly unmeritorious.

As noted by the United States Supreme Court, hearsay violates the Confrontation Clause of the United States Constitution unless it comes within a firmly rooted exception or contains other indicia of reliability. *White v. Illinois* (1992), 502 U.S. 346, 356, 112 S.Ct. 736, 743, 116 L.Ed.2d 848, 859. Thus, any error in admitting this hearsay would be constitutional error. In order to find constitutional error harmless, this court must find beyond a reasonable doubt that the error did not contribute to the verdict. *Chapman v. California* (1967), 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710–711.

Though the inadmissible statements could be characterized as cumulative to Cook's testimony, it is plain that these statements could have affected the verdict. They corroborated Cook's testimony and bolstered his credibility. This is significant, because, as testified by Det. Snyder, Cook himself had been a possible suspect in the murder.

Cook was a sometimes jealous (though not abusive) boyfriend to Susan Brunst. In addition, the record clearly reveals that Cook quickly directed police attention toward Johnson; the defense suggested at trial that Cook did so to divert suspicion from himself. Thus, the jury might have disbelieved Cook's damaging testimony but for the corroboration. Moreover, the state's case against Johnson was not overwhelming. Given that the inadmissible hearsay could have affected the verdict of guilty rendered against defendant, we hold that the testimony of Jones, Hopkins and Cynthia Brunst was not harmless beyond a reasonable doubt. Therefore, we sustain defendant's seventh proposition of law.

### III

In his eighth proposition of law, defendant argues that he was denied a fair trial by the prosecution's repeated introduction of evidence of his bad acts and bad character. Many of the examples cited by defendant in his brief before this court were not objected to, and any error is therefore deemed to be waived in the absence of plain error. See, *e.g.*, *State v. Johnson* (1989), 46 Ohio St.3d 96, 103, 545 N.E.2d 636, 643. However, several instances pointed out by defendant are worthy of merit and were in fact objected to at trial.

Det. Snyder testified that defendant continually referred to women as "whores" or "bitches" during an interview. Defense counsel's objection was overruled. Det. Snyder also testified, over objection, that defendant claimed that he and his father "often ha[d] sex together with Loretta [Hopkins]."

The state argues that this testimony indicates defendant's hatred and contempt for women, which tends to explain why defendant murdered his sister. However, we believe hatred of women indicates evidence of a character trait, and under Evid.R. 404(A), evidence of a character trait may not be used to prove that a person "acted in conformity therewith on a particular occasion." In our view, defendant's hatred of women could not be properly used to prove he killed Brunst.

Defendant's ex-girlfriend from Florida, Kathy Keller, testified over objection that defendant had stolen Denise Hutchinson's wallet, whereupon Hutchinson told him "not to come back over anymore." Keller also testified that Hutchinson "used to ask me how could I ever stand for a little son of a bitch like that to touch me."

We cannot find harmless the errors in admitting this testimony. The evidence of defendant's guilt in view of the entire record is weak. See *State v. Webb* (1994), 70 Ohio St.3d 325, 335, 638 N.E.2d 1023, 1032–1033. In addition, the epithet "son of a bitch" was undoubtedly inflammatory.

Defendant's sister, June Jones, also provided clearly objectionable character testimony: " * * * Mike was a pay back kind of person." She added that her mother accused defendant of threatening Susan's life before her disappearance. The defense objected, and the trial court asked the jury to disregard, adding: "That's not a proper response." However, the court also said, "You can form your own decision about what her testimony has been and so on."

Juries are presumed to follow the court's instructions, including instructions to disregard testimony. See *State v. Zuern* (1987), 32 Ohio St.3d 56, 61, 512 N.E.2d 585, 590. However, the trial court's instruction in this instance was more confusing than curative. Essentially, the trial court noted an improper response, but undercut its cautionary statement by apparently leaving it up to the jury to determine whether the improper testimony was credible or not. In doing so, the trial court clearly erred to the prejudice of defendant in not properly admonishing the jury to ignore the improper testimony. Cf. *State v. Allen* (1987), 29 Ohio St.3d 53, 55, 29 OBR 436, 438, 506 N.E.2d 199, 201 (instructions insufficient to cure error of revealing defendant's prior convictions to jury).

The errors complained of under this and the previous proposition of law prejudiced the right of defendant to a fair trial and thus compel a reversal of his conviction.

## IV

In his sixth proposition of law, defendant contends he was also prejudiced by the admission of an irrelevant and highly prejudicial letter he had written to the victim on April 4, 1989.

Over objection, the state introduced a letter defendant wrote while in jail in Florida. During her testimony, Cynthia read aloud a passage from the letter describing the victim, her sister June and Cynthia as "a perfect 10" and asking whether "there [are] any women * * * who look as good as my sisters or my niece Cindy." Another part of the letter from defendant disparaged an ex-girlfriend's age and sexual attractiveness in graphically gross language. While this passage was not read to the jury, it was not deleted from the exhibit either, despite defense objections.

Once again, we believe defendant raises a legitimate error that occurred during the course of the proceedings below. The passage regarding his ex-girlfriend should have been deleted, since it was irrelevant and unduly prejudicial to defendant, given its offensive sexual content. Allowing the jury to see this letter with this passage was not harmless error, especially in light of the weakness of the evidence in this case and the state's undue reliance on impermissible character evidence in its prosecution of defendant's capital trial. Accordingly, this proposition of law also has merit.

Upon a careful review of the entire trial transcript, we note that defendant's convictions were secured largely on the basis of circumstantial evidence. While circumstantial evidence inherently possesses the same probative value as direct evidence, *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, the circumstantial evidence of defendant's guilt in this case is far from overwhelming. Without overwhelming evidence of guilt, we cannot know what the verdict might have been had the jury not been influenced by errors that in our judgment denied defendant his due process right to a fair trial. See, generally, *State v. Keenan* (1993), 66 Ohio St.3d 402, 613 N.E.2d 203.

Accordingly, based on all the foregoing, we sustain defendant's first, sixth, seventh and eighth propositions of law, reverse the judgment of the court of appeals upholding his convictions, and remand the cause to the trial court for further proceedings in accordance with law.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., WRIGHT and PFEIFER, JJ., concur.

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., dissent.