OPINION
Defendant-appellant, Lahray Thompson, appeals a conviction entered upon a jury verdict in the Butler County Court of Common Pleas on September 19, 1996. We affirm.
During the early morning hours of November 13, 1995, Barry DiAngelo was shot twice while he was in his car in Hamilton, Ohio. Hamilton Police Lieutenant Joseph Murray testified that shortly after the shooting, he was driving towards the police station when he was "flagged down" by an individual sitting in a vehicle. The individual told the officer that his name was Ronald Gosser. Murray described Gosser as "extremely agitated, in a heightened state, and very excited and nervous." Murray stated that Gosser "blurted out that we just had a shooting" and "that he witnessed the shooting and could we please leave the area, he didn't want to be seen talking to me."
After Gosser followed Murray to another location, Murray testified that Gosser told him that he "observed three male blacks involved in the shooting." Gosser then described the individuals involved in the shooting, the clothing they were wearing, and that they left in a 1972 to 1974 "white over light blue Cadillac." Murray said that while Gosser was relating this information, he was still in a very agitated state. Murray then broadcast the information over the police radio and told Gosser to return home until contacted by the police. Murray intended to have a police cruiser dispatched to pick up Gosser at his home once the suspects were found, and then have Gosser identify the suspects.
Approximately forty minutes later, Gosser placed a 911 emergency call from a pay phone. Gosser told Tina Wiegel, the 911 operator, that the Cadillac that he had reported to Murray was by his home, and it looked like somebody was sitting in it. Gosser then requested her to send the police "real quick because there's the two dudes that did it. They're running my way." An exchange is heard on the 911 tape between Gosser and possibly two individuals. Gosser said "I'm with you" and one of the suspects demanded "How much money you got on you?" Several gunshots are then heard on the tape. The police arrived at the pay phone less than a minute later finding Gosser dead, with a single gunshot into the back of his head and six gunshots into his chest.
John Barefield, Lawrence Jones, and appellant were indicted for the shootings of DiAngelo and Gosser. Jones pled guilty while Barefield and appellant were tried separately. See State v. Barefield (Feb. 18, 1997), Butler App. No. CA96-05-094, unreported. Appellant was found guilty of two counts of aggravated murder, a violation of R.C. 2903.01(B); aggravated robbery, a violation of R.C. 2911.01(A)(1); and felonious assault, a violation of R.C. 2903.11(A)(2). Appellant appeals his convictions and presents three assignments of error.[1]
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT WHEN IT ADMITTED RONALD GOSSER'S STATEMENTS MADE TO LIEUTENANT MURRAY AS AN EXCITED UTTERANCE.
Appellant argues that the statements Gosser made to Murray were hearsay, and should have been excluded. During appellant's trial, appellant objected to Murray's testimony concerning what Gosser told him. The trial court overruled appellant's objection on the basis that Gosser's statements were excited utterances. We review the trial court's ruling to determine if the trial court abused its discretion by overruling appellant's objection. State v. Johnson (1994), 71 Ohio St.3d 332, 338, certiorari denied (1995), U.S., 115 S.Ct. 2622.
Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). An exception to the rule that hearsay is not admissible is an "excited utterance." An "excited utterance" is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2). The rationale for admitting an excited utterance is that the circumstances surrounding the excited statement do not allow the declarant a meaningful opportunity to reflect before speaking, and thus the chance that the statement is fabricated is greatly reduced. State v. Brown (1996), 112 Ohio App.3d 583, 602. The Ohio Supreme Court has held that:
 To be admissible under Evid.R. 803(2) as an excited utterance, a statement must concern "some occurrence startling enough to produce a nervous excitement in the declarant," which occurrence the declarant had an opportunity to observe, and must be made "before there had been time for such nervous excitement to lose a domination over his reflective faculties."
State v. Huertas (1990), 51 Ohio St.3d 22, 31, following Potter v. Baker (1955), 162 Ohio St. 488, paragraph two of the syllabus.
Gosser spoke with Murray shortly after the shooting of DiAngelo. There is little doubt that Gosser witnessing DiAngelo being shot was a "startling event." Evidence of Gosser's state following the shooting was provided by Murray, who testified that Gosser was "extremely agitated, in a heightened state, and very excited and nervous." Murray also stated that Gosser "blurted out that we just had a shooting" and that "that he witnessed the shooting and could we please leave the area, [because] he didn't want to be seen talking to me." Gosser's statements also reveal that he was fearful of possible retribution for being seen talking with Murray. A review of the record does not reveal any evidence indicating that Gosser's statements "were fabricated, distorted or reflective." Brown, 112 Ohio App.3d at 602.
It is therefore reasonable to conclude from the record that Gosser's statements were made in a state of nervous excitement and can be considered "excited utterances" under Evid.R. 803(2). Accordingly, we find that the trial court did not abuse its discretion in allowing Gosser's statements to Murray to be admitted as evidence. Appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT BY FAILING TO GRANT APPELLANT'S MOTION TO DISMISS PURSUANT TO CRIM.R. 29 AT THE CONCLUSION OF THE STATE'S CASE AND AGAIN AT THE CONCLUSION OF THE TRIAL.
Appellant argues that the trial court should have granted his motions to dismiss the felonious assault charge pursuant to Crim.R. 29 at the conclusion of the presentation of the state's case and his case. Appellant contends that there was insufficient evidence presented to support a conviction of felonious assault. The felonious assault charge was based upon the shooting of DiAngelo.
Crim.R. 29(A) states that:
 The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.
A trial court's decision to deny a Crim.R. 29(A) motion for acquittal based on the sufficiency of the evidence will be upheld if, construing the evidence in a light most favorable to the state, any rational fact finder could have found the essential elements of the charge proven beyond a reasonable doubt. State v. Dennis (1997), 79 Ohio St.3d 421, 430-31, following Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, and State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The linking of the following testimonies, in conjunction with Gosser's statements on the 911 call, demonstrate that a rational fact finder could have found that appellant participated in the felonious assault of DiAngelo:
William Mark, a firearms examiner with the Bureau of Criminal Investigation, testified that DiAngelo and Gosser were both shot with a .22 caliber firearm. Mark stated that the lans and grooves of the bullets taken from DiAngelo and Gosser were consistent with each other. A .22 caliber handgun was found shortly after the shooting outside an apartment building near where Gosser was shot. The lans and grooves of the .22 caliber handgun were also consistent with the bullets taken from DiAngelo and Gosser.
Ashley Gaither Collier testified that she saw John Barefield, Lawrence Jones, and appellant surround a white man on a pay phone. Collier stated that she then saw appellant and Jones back away from the man while Barefield shot the man in the back of the head.
Gosser told Wiegel in the 911 call the location of the Cadillac "that picked 'em up, and I told the officer," and that "it looks like there might still be somebody sitting in there." Gosser also told Wiegel that "there's the two dudes that did it. They're running my way."
Collier's testimony provides evidence that appellant was involved with the murder of Gosser because she identified him as being present when Gosser was shot by Barefield. Gosser's statements in the 911 call provide evidence that the individuals who murdered him were the same individuals that shot DiAngelo. Coupled with the ballistics evidence showing that DiAngelo and Gosser were shot with the same handgun, a rational trier of fact could conclude that appellant was involved with the DiAngelo shooting. Therefore, we find that the trial court did not abuse its discretion in overruling appellant's Crim.R. 29(A) motions. Appellant's second assignment of error is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT BY ENTERING VERDICTS OF GUILTY TO THE CHARGES OF AGGRAVATED MURDER, AGGRAVATED ROBBERY AND FELONIOUS ASSAULT.
Appellant argues that the guilty verdicts for aggravated murder, aggravated robbery, and felonious assault were not supported by the manifest weight of the evidence. Appellant contends that the jury should not have believed the statements of Linville Hall, Ashley Gaither Collier and Joyce Jones placing appellant at the phone booth at the time Gosser was murdered.
The weight to be given the evidence and the credibility of the witnesses are primarily issues to be decided by the trier of fact. In re Good (Feb. 24, 1997), Butler App. Nos. CA96-02-026, CA96-03-036, unreported, at 9, discretionary appeal not allowed (1997), 79 Ohio St.3d 1418. "The trier of the fact has the benefit of seeing and hearing the witnesses testify, and is in the best position to determine the facts of the case." State v. Bailey (June 9, 1997), Preble App. No. CA96-12-020, unreported, at 4.
In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court must unanimously disagree with the fact finder's resolution of the conflicting testimony. State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Thompkins at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172,175.
The key issue in appellant's trial was whether appellant was present when Gosser was murdered because once it is established that appellant was present at Gosser's murder, the convictions can be sustained. Appellant argued that the only individuals involved in Gosser's murder were Barefield and Jones. Appellant even had Barefield and Jones testify that they were the only ones involved in Gosser's murder. The focus of the state's presentation was to prove that appellant, Barefield, and Jones murdered Gosser in order to prevent him from identifying them as the persons who shot DiAngelo. To prove this theory, the state presented the following witnesses and evidence:
 Gosser's girlfriend, Dessell Walters, testified that Gosser was frantic before he left her house to use the pay phone. Walters testified that Gosser told her that "he had seen somebody shoot somebody" and "that he might be next." The state argued at appellant's trial that Gosser's statement heard on the 911 call that "I'm with you", was Gosser's attempt to tell his attackers that he was "with them" and would not implicate them in DiAngelo's shooting.
As stated in appellant's second assignment of error, Ashley Gaither Collier testified that she saw John Barefield, Lawrence Jones, and appellant surround a white man on a pay phone. Collier stated that she then saw appellant and Jones back away from the man while Barefield shot the man in the back of the head.
Linville Hall testified that prior to Gosser's shooting, he saw two persons walking towards the pay phone. Hall recognized one of the persons to be Jones. Shortly thereafter, Hall heard a gunshot. Hall testified that he then saw four people at the phone booth, and that he "observed two guys at the phone booth, one over sort of to the right of it, and a man lying on the ground." Hall also testified that he saw Barefield step forward and start shooting again at the person on the ground while standing over him.
Pursuant to Evid.R. 803(5), a statement made by Joyce Jones on November 13, 1995 at 6:25 P.M. to Hamilton Police was read into evidence.[2] Jones' statement reads in part:
 As we passed Ronald [Gosser], I saw Lahray Thompson and Lawrence Jones cross Pershing Avenue from the new homes and walk towards Ronald. At this time I thought these two were going to mess with Ronald and rob him. As they walked up to Ronald, Lawrence Jones walked up to Ronald's face, Lahray Thompson walked around to the rear of Ronald. At this time I saw both of these men pull guns out and point them at Ronald. Jones had his gun pointed at Ronald's face, Thompson had his gun pointed at Ronald's back. At this time I turned back around in my seat and looked out the front window.
Other evidence was presented by the state giving credence to Collier and Linville's testimony that there were three suspects involved in Gosser's murder. The state argued that the 911 call proved that Gosser was accosted by three individuals. In the call, Gosser referred to one person sitting in the Cadillac, and also two persons running in his direction. The state contended at trial that two voices can be heard on the tape other than Gosser's voice before the shots were fired. Gosser is also heard on the tape pleading for his life with his attackers. The trajectory of the first bullet fired into the back of Gosser's head shows that the person who fired the first shot was directly behind Gosser. The state theorized that it is unreasonable to believe that Gosser would turn his back on someone who was threatening to kill him, so he could be shot squarely in the back of the head. The state contended that Gosser was facing the two individuals heard on the tape, and did not know that a third individual had approached him from behind.
The state also argued that Gosser's statements to Murray and during the 911 call established that three individuals took part in the shooting of DiAngelo. Gosser told Murray that he "observed three black males involved in the shooting." In the 911 call, Gosser twice describes the Cadillac as the one "that picked 'em up." The state argued that Gosser is referring to "them" and not "him," and that a Cadillac picking up more than one person means at least three persons were involved, the driver of the Cadillac and at least two passengers.
While appellant is correct in asserting that Joyce Jones' testimony was not consistent with her November 13, 1995 statement because she testified that she could not remember seeing appellant approach Gosser at the phone booth, a fact finder could still find that her statement made on November 13, 1995 was more reliable then her testimony. Evidence was presented that while testifying during John Thompson's trial, held previous to appellant's trial, Joyce Jones stated that she saw appellant and Lawrence Jones approaching Gosser at the phone booth. Evidence was also presented that appellant threatened Joyce Jones in appellant's preliminary hearing by calling her a "lying bitch" and threatening to kill her. At appellant's trial, Joyce Jones had a sudden selective lapse of memory regarding her past statements identifying appellant as being involved in Gosser's shooting. When considering the above facts, it is reasonable for a fact finder to conclude that Joyce Jones' November 13, 1995 statement to the police was more reliable than her testimony.
Once it is shown that appellant was one of Gosser's attackers, the aggravated robbery conviction can be sustained. The crime of aggravated robbery is established by the 911 tape, because one of the attackers demanded from Gosser "how much money you got on you?" Also, pictures taken by police of Gosser's body show that his left pants pocket had been turned inside out. The crime of felonious assault of DiAngelo is established by the ballistic evidence and Gosser's statements to Murray. We have already detailed how Gosser's shooting and DiAngelo's shooting are related to each other.
We are not persuaded by appellant's argument that Collier, Linville, and Jones' statements should not be relied upon simply because their statements were contradicted by witnesses presented by appellant. Even though appellant presented many witnesses that testified that appellant was not present at either shooting, and that the only people involved were Jones and Barefield, the jury as fact finder, when presented with two different scenarios by appellant and the state, chose to believe the state's scenario. "[W]e must give substantial deference to the trial court's decisions on credibility because the decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the fact finder, who has seen and heard the witness." State v. Cooper (Sept. 26, 1997), Montgomery App. No. 16095, unreported, at 7. After having reviewed the record, we find that the jury did not "clearly lose its way."
Therefore, considering the conflicts of the evidence and the conflicting testimony of the witnesses presented by appellant and the state, we find that the jury's conviction of appellant of aggravated murder, aggravated robbery and felonious assault are supported by the manifest weight of the evidence. Accordingly, appellant's third assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and POWELL, J., concur.
[1] We note that appellant filed a pro se supplemental brief on May 27, 1997. Although we are not required to review appellant's supplemental brief because it was filed after the filing deadline, we reviewed the brief and found his arguments unpersuasive.
[2] Evid.R. 803(5) states: Recorded recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown by the testimony of the witness to have been made or adopted when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.