Defendant-appellant, John R. Moss, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of aggravated burglary, attempted rape, and kidnapping with specification.
According to the state's evidence, on July 17, 1998, Andrea Leers lived in an apartment at 347 Heatherbridge Lane. Because she worked approximately five minutes from where she resided, she usually came home for lunch. On Friday, July 17, when she went to her apartment for lunch, she saw a black male standing by the mailboxes for the apartments. He wore black tennis shoes, a tee shirt and nylon pants. She noticed the pants in particular because he had pulled up one of the pant legs. At his initiation they exchanged pleasantries, and she went into her apartment. She ate lunch and went back to work.
On the next day she took her two dogs outside at approximately 1:00 p.m. As she did so, she again saw the same man she had seen the previous day. He wore a light tee shirt, nylon pants, black shoes and a ball cap. The nylon pants were similar to the ones she had seen the day before, and he still had the one pant leg raised. He inquired whether she wanted some company; she replied that she did not and kept walking.
She was out for about one-half hour to forty-five minutes and returned to the apartment. Later that afternoon she decided to take the dogs outside once more. As she unlocked the door, turned the knob and opened the door, the door flew open as if someone had pushed or kicked it open. A man, later identified as defendant, was standing in the doorway. After recovering, she turned around and ran down the hallway of the apartment. Defendant chased her, grabbed the back of her shirt, and dragged her back to the living room. A struggle ensued. Defendant ultimately grabbed her shoulders and turned her around facing him. He licked her face, pushed her down onto her knees, exposed himself and attempted to place his penis into her mouth. He told her "bitch, you're going to suck my dick and you're going to like it." And he said, "and then you're going to come with me." (Tr. 110.)
At that point, Leers reached up, grabbed defendant's genitals and squeezed, twisted, and pulled them, causing defendant to yell and release Leers. She went to the kitchen to look for a telephone and there grabbed a knife that was sitting on the counter. She called 911 and told defendant to get out of her home. Defendant, curled over, stumbled out of the door. As she was speaking into the telephone, she realized defendant was the same man she had seen at the mailboxes the day before.
Leers identified defendant in a photo array. In examining the photo array, she recognized defendant as her attacker the first time she saw it. She was very certain, having no question in her mind about the identification. She also identified defendant in court, and identified the clothes defendant was wearing when he attacked her.
Based on the evidence before it, the jury found defendant guilty of aggravated burglary in violation of R.C.2911.11, attempted rape in violation of R.C. 2923.02 as applied to R.C. 2907.02, and kidnapping in violation of R.C. 2907.01 with a sexual motivation specification. The sexually violent predator specification to the attempted rape charge was tried to the court, which found defendant not guilty. The trial court sentenced defendant, and defendant appeals, assigning the following errors:
 ASSIGNMENT OF ERROR ONE
IT IS PLAIN ERROR TO IMPOSE MULTIPLE SENTENCES, EVEN IF THE SENTENCES ARE MADE TO RUN CONCURRENTLY, FOR ALLIED OFFENSES OF SIMILAR IMPORT.
 ASSIGNMENT OF ERROR TWO
THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO FIND THAT THE ATTEMPTED RAPE CHARGE AND THE AGGRAVATED BURGLARY CHARGE WERE ALLIED OFFENSES OF SIMILAR IMPORT AND SHOULD HAVE MERGED FOR PURPOSES OF SENTENCING.
 ASSIGNMENT OF ERROR THREE
THE TRIAL COURT ERRED BY IMPOSING CONSECUTIVE SENTENCES UPON THE DEFENDANT-APPELLANT.
 ASSIGNMENT OF ERROR FOUR
THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT ADMITTED IRRELEVANT AND PREJUDICIAL EVIDENCE DEALING WITH THE DEFENDANT'S DISLIKE OF FEMALES AND PREVIOUS PROBLEMS WITH CAUCASIAN FEMALES CONTRA EVID. R. 404 (A) (1) AND 404 (B).
 ASSIGNMENT OF ERROR FIVE
THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AND THEREFORE WAS DENIED A FAIR TRIAL UNDER THE OHIO AND FEDERAL CONSTITUTIONS.
 ASSIGNMENT OF ERROR SIX THE TRIAL COURT ERRED BY IMPOSING MAXIMUM SENTENCES.
Defendant's first assignment of error asserts the trial court erred in imposing multiple sentences for allied offenses of similar import, even if the sentences are made to run concurrently.
In sentencing defendant, the trial court imposed a sentence of ten years for the aggravated burglary charge under the first count of the indictment, eight years for the attempted rape charge under the second count of the indictment, and ten years for the kidnapping charge under the third count of the indictment. The court then stated:
 The Court finds that the kidnapping charge merges with the first two counts, in that there was not a separate animus, this was in the course of the same conduct or similar conduct. The Court finds that Count Three merges with Counts One and Two. So Count Three will be concurrent with Counts One and Two. Counts One and Two will run consecutive to each other. (Tr. 421-422.)
The trial court erred in imposing multiple sentences for allied offenses of similar import, even if the sentences run concurrently. See State v. Lang (1995), 102 Ohio App.3d 243, 251. Indeed, the state concedes error. Accordingly, the first assignment of error is sustained and this matter is remanded for re-sentencing with the concomitant opportunity for the state to elect on which of the merged crimes defendant will be re-sentenced.
Defendant's second assignment of error asserts the trial court erred in failing to find defendant's aggravated burglary and attempted rape convictions are allied offenses of similar import.
Subsequent to the trial of defendant's case, the Ohio Supreme Court decided State v. Rance (1999), 85 Ohio St.3d 632, and in that opinion clarified application of R.C. 2941.25, Ohio's multiple-count statute. In determining whether crimes are allied offenses of similar import, the Supreme Court explained that under R.C. 2945.25(A), "the statutorily defined elements of offenses that are claimed to be of similar import are compared in theabstract. * * * Courts should assess, by aligning the elements of each crime in the abstract, whether the statutory elements of the crimes `correspond to such a degree that the commission of one crime will result in the commission of the other.'" (Emphasissic.) Id. at 638, citing State v. Jones (1997), 78 Ohio St.3d 12,14. The court explained that if the elements do so correspond, the defendant may not be convicted of both "unless the court finds that the defendant committed the crimes separately or with separate animus." Id. at 638-639.
Here, defendant was charged with aggravated burglary, the essential elements of which are:
 (A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
 (1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
* * *
 (B) Whoever violates this section is guilty of aggravated burglary, a felony of the first degree.
(C) As used in this section:
 (1) "Occupied structure" has the same meaning as in section 2909.01 of the Revised Code.
Defendant further was convicted of attempted rape.[1] R.C.2907.02 states:
 (A)(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.
 (B) Whoever violates this section is guilty of rape, a felony of the first degree. * * *
 (C) A victim need not prove physical resistance to the offender in prosecutions under this section.
A comparison of elements of the two offenses, aggravated burglary and attempted rape, reveals they are not allied offenses of similar import. Aggravated burglary requires trespass in an occupied structure by force, stealth, or deception where the offender inflicts or attempts to threaten to inflict physical harm. By contrast, rape as charged here, requires an attempt at sexual conduct brought about by force or the threat of force. Because each offense requires proof of an element that the other does not, they are not allied offenses of similar import. Rance,supra, at 639.
Accordingly, defendant's second assignment of error is overruled.
Defendant's fourth assignment of error asserts the trial court erred in admitting prejudicial evidence that defendant did not like women and had prior problems with Caucasian women.
"An appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." State v. Williams (1977), 51 Ohio St.2d 112, paragraph one of the syllabus, modified on other grounds, State v. Gillard
(1988), 40 Ohio St.3d 226, paragraph two of the syllabus. Absent an objection, plain error must be proven in order to warrant reversal. Id. To prove plain error, defendant must show that, absent the alleged error, the result of the trial clearly would have been different. State v. Long (1978), 53 Ohio St.2d 91. Here, because defendant failed to object to the testimony at issue, we review the assigned error under the plain error standard.
Defendant's error is directed to the testimony of Wes R. Sorrell, a detective with the Columbus Police Department who testified to his interview of defendant in the early morning hours following the Saturday afternoon attack. The prosecution initiated the testimony by inquiring whether the detective had ever spoken with defendant about his feelings toward females. Sorrell responded that he asked defendant if defendant had a problem with women, and defendant said he did. Defendant indicated his mother had kicked him out of the house.
The detective then brought the questions closer to the circumstances of the offense and posed a hypothetical question to defendant, asking defendant whether he would respond if he was at his mailbox and a woman said hello to him. Defendant indicated he would not. Sorrell then asked defendant if he were going to "approach a female, an attractive female in order to maybe ask for a date, how would he do that?" (Tr. 244.) Following defendant's response, the detective asked whether defendant had ever been "rejected." (Id.) When defendant responded that he had, defendant followed with a statement to the effect that "you can't smack her, punch her, kick her or anything like that because they say no." (Tr. 244-245.) The detective then noted that at one point in the interview defendant commented about the accuser, saying "let me guess, is she white?" (Tr. 248.) When the detective asked why he had made the statement, defendant responded that "the white girls has always been that way." (Id.)
In attempting to show plain error, defendant points toState v. Johnson (1994), 71 Ohio St.3d 332, where three factors converged, causing the Supreme Court to find the detective's testimony to be prejudicial: (1) a detective testified that Johnson continually referred to women as "whores" or "bitches" during an interview, (2) the detective testified Johnson claimed that he and his father often had sex together with an acquaintance of the victim, and (3) the state introduced a letter Johnson wrote while he was in jail, which contained offensive sexual content. The Supreme Court found the testimony "indicates defendant's hatred and contempt for women, which tends to explain why defendant murdered his sister. However, we believe hatred of women indicates evidence of a character trait, and under Evid.R. 404(A), evidence of a character trait may not be used to prove that a person `acted in conformity therewith on a particular occasion.'"Id. at 340.
Unlike Johnson, the evidence here was not objected to, perhaps because it was not as egregious as the testimony inJohnson. Moreover, although Sorrell's testimony was improper, we cannot say that absent the error the outcome of the trial would have been different. The state offered considerable testimony, including the victim's solid identification of defendant as the perpetrator of the offense. Her identification was based not only on the incident itself, but on her having seen defendant at her apartment mailboxes the day before. Moreover, she remembered defendant because of the nature of the clothing he wore the day she saw him at the mailboxes, clothing which he wore on the day of the attack and which she identified at trial. While defendant was able to note color discrepancies between her description of the pants defendant wore on the day of the attack and those presented in the court room, the state's evidence nonetheless was overwhelming.
Accordingly, defendant's fourth assignment of error is overruled.
Defendant's fifth assignment of error asserts counsel was ineffective in failing to object to the testimony noted in the fourth assignment of error, and in failing to urge that Counts One and Two should merge for sentencing, as discussed in the second assignment of error.
In order to prevail on a claim of ineffective assistance of counsel, defendant must show that "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." State v. Reynolds (1988),80 Ohio St.3d 670, 674 (citing Strickland v. Washington (1984),466 U.S. 668). A two-prong test is used to examine claims of ineffective assistance of counsel. In order to meet Strickland's
first prong, defendant must show counsel's conduct was objectively deficient, producing evidence that counsel acted unreasonably.State v. Sallie (1998), 81 Ohio St.3d 673, 674. In order to meetStrickland's second prong, defendant must prove that but for counsel's error a reasonable probability exists that the result of the trial would be different.
Defendant first asserts that counsel was ineffective in failing to urge that Counts One and Two should merge under R.C.2941.25, as argued in defendant's second assignment of error. For the reasons set forth in our discussion of the second assignment of error, counsel did not err in failing to so argue. Because the two counts do not merge, defendant fails to meet the first prong of Strickland.
Defendant next contends his counsel was ineffective in failing to object to the disputed testimony discussed under the fourth assignment of error. As noted in our discussion of the fourth assignment of error, however, the state's evidence was so overwhelming that, even in the absence of the detective's testimony, a reasonable probability does not exist that the result of the trial would be different. Accordingly, even if counsel should have objected, the record fails to demonstrate the requisite prejudice to defendant. Accordingly, defendant's fifth assignment of error is overruled.
Defendant's sixth assignment of error asserts the trial court erred in imposing the maximum sentence on defendant because it failed to state its reasons for imposing maximum sentences, as required by R.C. 2929.14(C).
Since the trial court's sentencing hearing in this matter, the Supreme Court issued its decision in State v. Edmonson
(1999), 86 Ohio St.3d 324. In addressing R.C. 2929.14(C), the court noted that section established a public policy disfavoring maximum sentences except for the most deserving offender, and states:
 "[T]he court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense * * * only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders * * * and upon certain repeat violent offenders * * *." (Emphasis sic.) Id. at 328.
Under R.C. 2929.14(C), "the record must reflect that the trial court imposed the maximum sentence based on the offender satisfying one of the listed criteria in R.C. 2929.14(C)." Id. at 329. Here, the trial court stated: "The Court has considered the form of the offense which you committed, you were found guilty of committing in this case, the Court feels it's one of the worst forms of conduct * * *." (Tr. 420.) Accordingly, the trial court found that defendant fit within one of the categories of offenders in R.C. 2929.14(C).
While R.C. 2929.14(C) does not itself require that the trial court state its reasons for imposing the maximum sentence, R.C. 2929.19(B)(2)(e) does. Here, the trial court explained its reasons. Specifically, the court noted the maximum sentence was required to protect the public, and to punish defendant for the crimes for which he had been found guilty. Cognizant that it must impose a sentence appropriate to the crimes for which defendant was found guilty, must not demean the seriousness of the offense, and must take into account the impact upon the victim, the court also noted the likelihood defendant would engage in future offenses and the seriousness of the offenses.
The court explained why it found defendant's conduct to be among the worst forms of the offense: "the Court feels it's one of the worst forms of conduct which alleged in the indictment for which you were found guilty, that being the aggravated burglary, breaking in someone's home, the attempted rape of Miss Leers, and the forcible and painful conduct you inflicted upon her and through the kidnapping charge." (Tr. 420-421.) Contrary to defendant's contentions, the trial court thus stated its reasons for finding defendant committed a worst form of the offense and imposing maximum prison terms. Accordingly, defendant's sixth assignment of error is overruled.
Defendant's third assignment of error asserts the trial court erred in imposing consecutive sentences. Pursuant to R.C.2929.14(E)(3), the court may impose consecutive sentences as follows:
 If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender, that the seriousness of the offenses requires consecutive service, or that the danger posed to the public by the offender is great unless consecutive service is required, and if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
R.C. 2929.19(B)(2)(c) then sets the procedure the trial court must follow when imposing consecutive sentences. It requires that the trial court "make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances: "* * * [I]f it imposes consecutive sentences under section 2929.14 of the Revised Code, its reasons for imposing the consecutive sentences."
Here, although the trial court sentencing hearing arguably did not specify one of the factors set forth in R.C.2929.14(E)(3), the trial court filed a "sentencing memorandum to the file" in which the court commented on the seriousness of the offense, as well as defendant's prior record. The trial court concluded that given defendant's history of criminal conduct, the court could impose consecutive sentences to protect the public from future crime. The trial court thus relied on R.C.2929.14(E)(3)(b) and (c) and, pursuant to R.C. 2929.19(B)(2)(c), specified why a consecutive sentence was imposed in this case.
Moreover, the record contains evidence supporting the trial court's rationale. In addition to the convictions here, defendant in 1993 was charged with raping a twelve-year-old girl. While the charges were pending, defendant called the victim's grandmother because the girl was living with her. The victim's grandmother filed a police report with the Gahanna Police Department because in the calls defendant said "he was going to fuck April whenever he wanted to." (Tr. 378.) According to the victim's grandmother, defendant called between fifteen and eighteen times over a period of a couple of days. Moreover, the victim had to be hospitalized for depression, including threats of suicide. Defendant ultimately pled guilty to corruption of a minor.
In addition, the investigating officer on the rape charges testified that defendant admitted to having a sexual relationship with a twelve-year-old victim on July 4, 1993. During the course of that investigation, defendant made a threat to another officer about the investigating officer. Finally, the record indicates a conviction out of an indictment for aggravated burglary in which defendant entered a guilty plea to breaking and entering.
The foregoing evidence supports the trial court's conclusion that defendant is "most likely to engage in future offenses," especially comparing the nature of prior offenses with the convictions at issue. Accordingly, defendant's third assignment of error is overruled.
Having overruled defendant's second, third, fourth, fifth, and sixth assignments of error, but having sustained his first assignment of error to the extent indicated, we affirm the judgment of the trial court in part, reverse in part, and remand this matter to the trial court for re-sentencing.
Judgment affirmed in part and reversed in part; caseremanded.
BROWN and TYACK, JJ., concur.
[1] Under R.C. 2923.02, "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."