OPINION
Defendant-appellant Dominique Alexander appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of insurance fraud in violation of R.C. 2913.47. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On September 30, 1999, the Stark County Grand Jury indicted appellant on one count of insurance fraud in violation of R.C.2913.47, a felony of the fifth degree. At his arraignment on October 8, 1999, appellant entered a plea of not guilty to the charge contained in the indictment. Thereafter, a jury trial commenced on November 15, 1999. The following evidence was adduced at trial. On August 10, 1999, appellant received a 1992 Plymouth Sundance as a gift from his mother. Nine days later, appellant contacted Progressive Insurance Company to purchase an automobile insurance policy covering such vehicle. The policy became effective the same day. Appellant, on August 26, 1999, contacted the Massillon Police Department to report that his unlocked vehicle had been stolen from a Blockbuster Video store parking lot at approximately 10:20 p.m. At the time, appellant had been in the store for approximately ten minutes with the vehicle's keys. The same evening, appellant contacted Progressive Insurance Company to file a stolen vehicle report. In accordance with Progressive's standard procedure for handling stolen vehicle cases, Kandy Walker, a claims investigator with Progressive Insurance Company, met with appellant on August 30, 1999, "[t]o obtain an in-person recorded statement, obtain the title, keys to the vehicle, photocopy of driver's license, any receipts or maintenance done on the vehicle." Trial Transcript at 106. During a recorded interview with Walker, appellant, who told Walker that his vehicle had been stolen from Blockbuster Video's parking lot on August 26, 1999, between 10:20 and 10:30 p.m., denied any involvement in the theft. Appellant also provided Walker with a key that allegedly operated appellant's vehicle. However, once appellant's vehicle was later recovered, it was discovered that the key was not the key to appellant's vehicle. William Piatko, the owner of a body shop and an acquaintance of appellant's, testified at the November, 1999, trial. Piatko testified that on approximately August 23rd or 24th of 1999, appellant brought his vehicle in after hours for a verbal estimate to repair damage to the vehicle. According to Piatko, the vehicle was rusted and needed painting. After receiving a verbal estimate from Piatko, appellant left the body shop. Thereafter, on the evening of August 26th or 27th, appellant returned to Piatko's body shop at 7:00 or 8:00 p.m. and asked Piatko if "he could leave the vehicle on my property until he had come up with the money to get the repairs taken care of." Trial Transcript at 128. After Piatko gave appellant his approval to do so, appellant left his vehicle parked behind Piatko's body shop. Piatko testified at trial that he never gave appellant a written estimate for the repair work. Piatko testified that he noticed that the plates were missing from appellant's vehicle. After Ken Jeffries told Piatko that appellant's vehicle had been reported stolen, Piatko became even more suspicious. When Piatko went behind his shop to examine appellant's vehicle, he discovered that the vehicle's VIN number was covered up with paper napkins. Piatko, who realized that appellant had failed to leave him a key to the locked vehicle, then contacted the Perry Police Department. Appellant's vehicle was recovered by the Perry Police Department on August 31, 1999. Detective Kenneth Hendricks of the Massillon Police Department was assigned to investigate the theft of appellant's vehicle. At trial, Hendricks testified that appellant contacted him on approximately August 28, 1999, asking whether there were any leads or developments in the investigation. On August 31, 1999, after appellant's vehicle had been recovered, Hendricks went to Piatko's body shop to view and photograph the vehicle. Hendricks testified that he verified that the vehicle, which was in good condition and was missing license plates, was, in fact, a stolen vehicle. Hendricks also testified that there was "absolutely no damage to the steering column." Trial Transcript at 160. According to Hendricks, "[t]o take a car without having keys would require either a duplicate key itself or someone tampered with the steering column prying at the ignition trying to hotwire that vehicle." Trial Transcript at 161. On September 1, 1999, Hendricks spoke with appellant at approximately 7:30 p.m. When Hendricks informed appellant that his vehicle had been recovered and that he had questions about the theft, appellant told Hendricks that he would be willing to drop his insurance claim. Appellant, when questioned by Hendricks, denied dropping off his vehicle at Piatko's body shop and stated that he had no idea who had done so. At the conclusion of the evidence and the end of deliberations, the jury, on November 16, 1999, returned with a verdict finding appellant guilty of insurance fraud in violation of R.C. 2913.37. The jury further found that the value of the property involved was $500.00 or more and less than $5,000.00. Thereafter, appellant was sentenced to eleven months in prison. A Judgment Entry memorializing appellant's sentence was filed on November 19, 1999. It is from his conviction and sentence that appellant now prosecutes his appeal, raising the following assignments of error:
 1. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS BY FINDING APPELLANT GUILTY OF INSURANCE FRAUD, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, WHERE THE STATE FAILED TO OFFER SUFFICIENT EVIDENCE TO PROVE EACH AND EVERY ELEMENT OF THE CHARGED OFFENSE BEYOND A REASONABLE DOUBT. II APPELLANT WAS DENIED A FAIR TRIAL AND DUE PROCESS AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS WHEN THE JURY WAS EXPOSED TO INFLAMMATORY AND HIGHLY DAMAGING TESTIMONY REGARDING APPELLANT'S PAROLE STATUS AND APPELLANT'S STATEMENTS WHICH WERE NOT PROPERLY DISCLOSED BY THE STATE, DURING THE DISCOVERY PROCESS, PRIOR TO TRIAL.
 I
Appellant, in his first assignment of error, contends that his conviction for insurance fraud was against the sufficiency and manifest weight of the evidence. We disagree. In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jenks, supra, at paragraph two of the syllabus.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997), 78 Ohio St.3d 380, 387, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. Upon review of the record, we find that appellant's conviction is not against the sufficiency of the evidence since, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime of insurance fraud proven beyond a reasonable doubt. Appellant in the case sub judice was indicted for insurance fraud in violation of R.C. 2913.47, a felony of the fifth degree. Such section provides, in relevant part, as follows: "(B) No person, with purpose to defraud or knowing that the person is facilitating a fraud, shall do either of the following: (1) Present to, or cause to be presented to, an insurer any written or oral statement that is part of, or in support of, an application for insurance, a claim for payment pursuant to a policy, or claim for any other benefit pursuant to a policy, knowing that the statement, or any part of the statement, is false or deceptive. (C) Whoever violates this section is guilty of insurance fraud. Except as otherwise provided in this division, insurance fraud is a misdemeanor of the first degree. If the amount of the claim that is false or deceptive is five hundred dollars or more and is less than five thousand dollars, insurance fraud is a felony of the fifth degree . . ."
Appellant specifically contends that the State failed to prove beyond a reasonable doubt that appellant made an oral or written false or deceptive insurance claim to Progressive Insurance Company on August 26, 1999, and that the value of appellant's vehicle on or about such date was between $500.00 and $5,000.00 as is required for a fifth degree felony. Both the indictment and the Bill of Particulars in this matter indicate that appellant committed insurance fraud "on or about August 26, 1999." At appellant's trial, Kandy Walker, a claims adjuster with Progressive Insurance Company, testified that appellant filed an insurance claim reporting his vehicle stolen on August 26, 1999. While Walker did not take the initial telephone call from appellant on such date, she testified that when she checked Progressive Insurance Company's computer, "[t]he "I" on the [computer loss] screen says insured and also he [appellant] was the person identified as the first caller on the computer as well." Trial Transcript at 103. Walker was able to verify from the computer screen that appellant was the insured under a Progressive Insurance policy and that appellant, as the insured, had made the report. When Walker met with appellant on August 30, 1999, he verified that his vehicle had been stolen on August 26, 1999 and verified that he had made an insurance claim on such date. While appellant points out that Piatko, the owner of the body shop, testified in his original statement to the police that appellant's vehicle arrived at his shop on August 28, 1999, two days after the date of the alleged insurance fraud, Piatko testified at trial that he "could just about guarantee that it was the 26th." Trial Transcript at 147. Piatko further testified that he was "positive" that appellant did not drop his car off on August 28, 1999. Trial Transcript at 142. Thus, contrary to appellant's assertions, there is sufficient, competent and credible evidence in the record that "on or about August 26, 1999," appellant made a false oral claim to Progressive Insurance Company in an attempt to receive a claim payment. As is stated above, appellant also maintains that there was insufficient evidence to prove that the value of his vehicle on or about August 26, 1999, was between $500.00 and $5,000.00. While appellant argues that Walker was not qualified as an expert to testify about the value of appellant's vehicle, we concur with appellee that the issue in this case was how much Progressive would have paid on appellant's claim. Expert testimony as to valuation was, therefore, unnecessary. At trial, Walker testified that the average NADA value of appellant's vehicle was $3,012.00 and that such figure was a "starting point." Walker further testified that such figure probably would have been adjusted upwards since appellant had installed a stereo in his vehicle and that she would have been comfortable paying out around $3,000.00 on appellant's claim. When asked whether she could say "for certain" that the payout would have been more than $500.00, Walker responded in the affirmative. Trial Transcript at 115. Based on the foregoing, we do not find, as a matter of law, that appellant's conviction for insurance fraud was based upon insufficient evidence. Construing the evidence in favor of the prosecution, any rational trier of fact could have found that appellant made an oral false or deceptive statement to Progressive Insurance Company on August 26, 1999, and that the value of the claim that was false or deceptive was $500.00 or more and less than $5,000.00. Moreover, while appellant asserts that his conviction is against the manifest weight of the evidence, we find that there is no evidence that the jury lost its way so as to create a manifest miscarriage of justice. The jury, as trier of fact, had the opportunity to weigh the witnesses' testimony, including that of Kandy Walker and William Piatko, and to assess their credibility. Clearly, the jury found the testimony of such witnesses credible. Appellant's first assignment of error is, therefore, overruled. II Appellant, in his second assignment of error, argues that he was denied a fair trial and due process when the jury was informed of appellant's parole status during the trial in this matter. Prior to the start of trial on November 15, 1999, appellant's trial counsel made an oral motion in limine "to exclude any mention of my client's prior record unless he testifies and opens the door." Trial Transcript at 5. Such motion was granted by the trial court. Previously, the prosecutor had instructed her witnesses to refrain from mentioning appellant's prior criminal record. However, despite the prosecutor's instructions, information regarding appellant's status on parole was disclosed during trial. Specifically, Officer Kenneth Hendricks, when asked how appellant responded when told that his vehicle had been recovered, responded as follows: "After I had advised him about the car being recovered, my suspicions, his initial statement to me was I'll tell you whatever you want me to say. I just — I am on parole. I don't want to go back to jail." Trial Transcript at 164. After appellant's counsel objected to such testimony stating that it was "not in any [discovery] statement that I have," the trial court sustained the objection and stated that it would grant a mistrial if one was requested since it found Detective Hendricks' testimony to be prejudicial. Trial Transcript at 164. The trial court also noted that Hendrick's statement had not been provided to appellant during discovery. The trial court further informed appellant that it believed he was taking a "great risk" by allowing Hendricks' statements to go before the jury. Trial Transcript at 170. However, after consulting with counsel and being warned by the judge that "the Court is not satisfied that asking the jury to disregard [the statement regarding appellant's parole status] would, in fact, wipe the slate clean," appellant chose to proceed with the trial for strategic purposes. Trial Transcript at 169. Thereafter, the jury was given the following limiting instruction: "THE COURT: Ladies and gentlemen, before we proceed, I want to go over a couple of things with you and it's very important that you understand these and that is that right prior to taking the recess in response to a question from the prosecutor the witness had indicated that a certain statement had been made by the Defendant and then indicated that the Defendant was on parole. I sustained an objection to that and what I want to make sure that you understand is that you have to wipe that out of your minds. You clearly have to wipe that out of your minds. In other words, the fact that somebody at one point in time did something and they are on parole doesn't mean they committed another crime. And we have rules that are specific to that. You have to rely just on the evidence that you hear in this courtroom. And to the extent during your deliberations anyone mentions but he was on parole or anything like that, a red flag should go up and the Court should immediately be notified because absolutely that is testimony that you should not be aware of and there is a reason for that. And that is because there is too much of a tendency to judge somebody's weight on their past rather than the evidence. So you have to rely solely on the testimony that I allow into evidence and you totally have to disregard that in your deliberations. It's very important. With that said, we are ready to proceed."
Trial Transcript at 178-179.
Since appellant did not request a mistrial, this case should be reversed only upon a showing of plain error. Crim.R.52(B) provides: "(B) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."
Notice of plain error under this rule is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. See: State v. Long (1978), 53 Ohio St.2d 91; State v. Cooperidder (1983), 4 Ohio St.3d 226. Plain error occurs only when, but for the error, the outcome of the trial would have been different. State v. Greer (1988), 39 Ohio St.3d 236, 252. Upon our review of the record, we cannot say that, but for the error in allowing in testimony regarding appellant's parole status, the outcome of the trial would have been different. As is stated above, Kandy Walker testified that on August 26, 1999, appellant filed an insurance claim with Progressive Insurance Company reporting his vehicle stolen. When Walker met with appellant on August 30, 1999, appellant told Walker that his vehicle had been stolen on August 26, 1999. Appellant also denied any involvement in the theft and gave Walker a key that it was later determined was not to appellant's vehicle. William Piatko, who knew appellant, testified that appellant, on or about August 26, 1999, brought his vehicle into Piatko's body shop after hours and asked if he could leave it there until he had money for the repairs. Piatko further testified that appellant, only days earlier, had brought his vehicle into Piatko's body shop for a verbal estimate for repairs and then left with his vehicle. After Piatko was informed by a third party that appellant's vehicle had been reported stolen, Piatko examined the vehicle only to discover that the license plates were missing and that the VIN number was covered up by napkins. Piatko also discovered that although the vehicle was locked, appellant had failed to leave him keys to the same. Moreover, when the vehicle was recovered by the police, there was no damage to the steering column and thus no evidence that someone had attempted to hotwire the vehicle. Based on the foregoing evidence, we cannot say that appellant's substantial rights were so adversely affected by Hendricks' testimony so as to undermine the fairness of appellant's trial and to result in a miscarriage of justice. We find that the admission of testimony regarding appellant's parole status was not plain error since there was evidence beyond a reasonable doubt that appellant committed the crime of insurance fraud. The outcome of the trial, therefore, would not have been different but for such alleged error. Moreover, as is set forth above, the jury was given a lengthy limiting instruction which they are presumed to have followed. State v. Johnson (1994),71 Ohio St.3d 332, 340.
Accordingly, appellant's second assignment of error is overruled. The judgment of the Stark County Court of Common Pleas is affirmed.
 _________________ EDWARDS, J.
By Edwards, J. Farmer, P.J. and Wise, J. concurs.