The STATE of Ohio, Appellee,

v.

JUNIPER, Appellant.

[Cite as *State v. Juniper* (1998), 130 Ohio App.3d 219.]

Court of Appeals of Ohio,
Fifth District, Fairfield County.

Nos. 97CA0017, 97CA0015.

Decided Oct. 2, 1998.

*Gregg Marx,* for appellee.

*Samuel H. Shamansky,* for appellant.

FARMER, Judge.

On July 12, 1996, the Fairfield County Grand Jury indicted appellant, Shawn M. Juniper, on one count of aggravated trafficking in violation of R.C. 2925.03(A)(10) with two specifications, one count of aggravated trafficking in violation of R.C. 2925.03(A)(1), one count of permitting drug abuse in violation of R.C. 2925.13(A) with a specification, and one count of fleeing and eluding in violation of R.C. 2921.331. The charges stemmed from an undercover drug buy on January 25, 1996, wherein appellant was the driver of the Chevrolet Blazer vehicle involved therein.

On September 4, 1996, appellant filed a motion to suppress evidence, including appellant's vehicle and any statements made by appellant. Appellant claimed that law enforcement officers had misused the felony-investigation subpoena statute. Pursuant to an agreed entry filed October 31, 1998, appellant's statements were suppressed.

A jury trial commenced on October 1, 1996. During deliberations, it was brought to the trial court's attention that a document containing appellant's suppressed statement had been was inadvertently submitted to the jury. Appellant moved for a mistrial, and a ruling was deferred pending the jury's verdict. The jury found appellant guilty as charged.

On October 23, 1996, appellant filed a motion for new trial. By entry filed November 22, 1996, the trial court denied that motion and appellant's motion for a mistrial. By entry filed January 28, 1997, the trial court sentenced appellant to a term of fifteen years to life plus a three-year term of actual imprisonment, to be served consecutively, and imposed a $7,500 fine plus costs.

Both appellant and appellee, the state of Ohio, filed notices of appeal. This matter is now before this court for consideration. Assignments of error are as follows:

## I

"The trial court erred in overruling appellant's motion for a mistrial after it was established that appellant's illegally obtained confession, which had been excluded from evidence, was nevertheless submitted to the jury, thereby violating his rights as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and comparable provisions of the Ohio Constitution."

## II

"The trial court erred in overruling appellant's motion for a new trial after it was established that appellant's illegally obtained confessions, which had been excluded from evidence, was nevertheless submitted to the jury, thereby violating his rights as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and comparable provisions of the Ohio Constitution."

## III

"The trial court erred in denying appellant's motion to suppress the Chevrolet Blazer, because this evidence was seized in violation of his rights as guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and comparable provisions of the Ohio Constitution."

## Cross–Assignment of Error

"The trial court's decision to refuse to order a mandatory fine while ordering a general fine of $7500.00 was arbitrary, capricious, unreasonable, and contrary to law."

## Assignments of Error I, II

Appellant claims that the trial court erred in denying his motion for a mistrial and motion for a new trial based upon the inadvertent submission to the jury of appellant's suppressed statement. We agree.

After hearing and extensive briefing on appellant's statement to law enforcement officers obtained under the felony-investigation subpoena statute (R.C. 2935.23), the trial court sanctioned an agreed entry suppressing the statement. By memorandum filed September 24, 1996, the trial court held as follows:

"First, the defendant asserts that the case against Shawn M. Juniper should be dismissed for reasons heretofore examined by the court, that is, misuse of the felony investigation subpoena procedure. The court again takes notice of the agreement reached by counsel or at least the offer of the state not to use the statement made by the defendant except upon cross-examination. The court

finds such sanction to be adequate and again reiterates this resolution as the proper order to be made."[1]

At the conclusion of the trial, a letter (State's Exhibit No. 29/Court's Exhibit No. 1) from the prosecutor to defense counsel went with the jury into the deliberation room. Included within this exhibit were the statements "The Defendant later admitted to being the driver of the Blazer that was involved in the chase" and "The Defendant stated that he is unable to identify the passenger that was in his vehicle that day."[2]

At the conclusion of the state's case in chief, the trial court and counsel reviewed the exhibits, and the prosecutor agreed that the letter "doesn't go to the jury. And it is in the group. That goes with the file for the purpose of any appeal, if it would ever get that far."

After commencing deliberations, the forelady of the jury returned to open court and the following exchanges occurred:

"THE COURT: Do you want to have your seat, if you would, please? You're Juror 101; is that correct?

"JUROR NO. 101: Yes, sir.

"THE COURT: We have had a question come up that I would need to inquire of you. Is this your note about there being no sticker on Exhibit No. 29?

"JUROR NO. 101: It's my note that we were missing several items of evidence: A, B, C, D—and there were two more. There were six pieces ——

"THE COURT: Okay. We'll get to that in a minute. I have here a letter from the Prosecutor's Office marked State's Exhibit 29 with no sticker on it. And I have attached to that a comment, 'There's no sticker. Are we supposed to have this?'

"JUROR NO. 101: Right.

"THE COURT: Could you tell us what the jury did with this? Have they considered this letter?

"JUROR NO. 101: No, we didn't consider that, really. We just looked at that and wondered if we should be considering it.

"THE COURT: Okay. No juror has read this; is that correct?

"JUROR NO. 101: It has been read, yes.

---

1. Appellant never testified at trial and the opportunity to cross-examine him with the statement never arose.

2. These statements were located on page two of the exhibit.

"THE COURT: And I take it—has it been commented on also?

"(No verbal response.)

"THE COURT: I mean, was it read out loud?

"JUROR NO. 101: It was not a factor—it has not been a factor in our discussions.

"THE COURT: Okay. Well, somebody read it, or was it read out loud, or how did this happened?

"JUROR NO. 101: It was read out loud.

"THE COURT: Okay. And you say it's not been a factor?

"JUROR NO. 101: No, it hasn't been a factor.

" * * *

"MR. HUEY: Were you all each taking an item of the evidence and reading through it? Would that—I don't know how the jury ——

"JUROR NO. 101: No. Actually, one person—a couple of people were just looking through the pile of evidence to make sure that we had all of the pieces there. So it seems like one person—yea, not all of us didn't—we were not all looking at all of the evidence, no.

"MR. HUEY: But somebody was—you were trying to sort out of the evidence, sort out the exhibits.

"JUROR NO. 101: Uh-huh. Uh-huh.

"MR. HUEY: A couple of people were doing that.

"JUROR NO. 101: Uh-huh. Uh-huh.

"MR. HUEY: And somebody found that exhibit and read a portion of that page.

"JUROR NO. 101: Uh-huh. Uh-huh. Uh-huh.

"MR. HUEY: Do you know which portion of that page that would be?

"JUROR NO. 101: The second part. There are two pages, I think and I think it was the second part of it.

"THE COURT: Well, actually, there are three pages. You say there were things on the second page that were read to the jury?

"JUROR NO. 101: Yes.

"THE COURT: Could you maybe explain a little bit better what you mean by ——

"JUROR NO. 101: I can tell you exactly what was ——

"THE COURT: —— that it was not a factor?

"JUROR NO. 101: Yes, I could. We had already had—we had already had our discussion and kind of come to our decision, and then this was found and brought out. This was not a factor.

"THE COURT: You had already reached a decision?

"JUROR NO. 101: Well, in a tentative sense. Not—we didn't finalize anything, but we had all discussed and brought our—we all knew what everybody else thought."

After an in-chambers discussion between the trial court and counsel (not recorded), the trial court instructed the jury as follows:

"There is one further question on what was marked as State's Exhibit 29, but not given a sticker. The question is: 'Are we supposed to have this?'

"The answer is no. This was submitted to you by mistake. I think when that was submitted to you, everybody was so tired, I don't know that anybody looked at it. I will submit to you the correct Exhibit 29 that you may consider.

"The letter that you returned to the Court must not be considered by you for any reason. This is not evidence and it's not proper that you consider it. I would give you the same instruction that I gave when an answer has been given that I've instructed you to disregard. You must treat it as though you had never seen it. If you have reached any kind of understanding, you should not change your opinions or decisions on the basis of this letter. You should just disregard it. I will give you the correct Exhibit 29 that you may consider in your deliberations."

Defense counsel moved for a mistrial but suggested that the trial court withhold its ruling until a verdict was reached. The trial court assented to this suggestion, agreeing to wait seven days after the verdict to rule on the motion and to continue appellant's bond in the event of an adverse verdict.

■ The long-standing law of this nation and state is that involuntary confessions are an abridgement of the Due Process Clause of the Fourteenth Amendment and the right against self-incrimination afforded under the Fifth Amendment and will not be permitted. Therefore, any conviction including an unlawful and involuntary confession will not stand. *Rogers v. Richmond* (1961), 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760; *Jackson v. Denno* (1964), 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908.

It is undisputed there was a constitutional error in submitting the unlawfully obtained statement to the jury. As explained by the Supreme Court of Ohio in *State v. Esparza* (1996), 74 Ohio St.3d 660, 661, 660 N.E.2d 1194, 1196, there are two types of constitutional error:

■ "In *Arizona v. Fulminante* (1991), 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302, the United States Supreme Court distinguished between two types of constitutional error: 'trial error' and 'structural error.' Trial error 'occur[s] during the presentation of the case to the jury, and * * * may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt.' 499 U.S. at 307–308, 111 S.Ct. at 1264, 113 L.Ed.2d at 330. Structural error affects 'the entire conduct of the trial from beginning to end' as well as 'the framework within which the trial proceeds.' Such errors 'defy analysis by "harmless-error" standards.' *Id.* at 309–310, 111 S.Ct. at 1265, 113 L.Ed.2d at 331."

. The *Esparza* court went on to hold that evidence improperly submitted to a jury is trial error, not structural error, and is therefore subject to review under the harmless error standard. *Id.* at 661–662, 660 N.E.2d at 1195–1197. The Supreme Court of Ohio in *State v. Williams* (1983), 6 Ohio St.3d 281, 6 OBR 345, 452 N.E.2d 1323, paragraph six of the syllabus, held, "Where constitutional error in the admission of evidence is extant, such error is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of the defendant's guilt."

The thrust of appellant's defense was that he was not the driver of the vehicle involved in the drug buy. Appellant sought to question the credibility of the law enforcement officers who identified him and an individual by the name of Scott Lewis who had entered into a plea negotiation for his testimony to identify appellant. Once the jury was cognizant of appellant's statement that he in fact was driving the vehicle, the entire defense theory of the case was discredited. The law enforcement officers' identifications and Lewis's testimony are validated. Appellant's case was nullified by the inadvertent admission of the confession.

Upon review, we find that the constitutional error was not harmless error beyond a reasonable doubt. The trial court erred in denying appellant's motions for mistrial and new trial.

Assignments of Error I and II are sustained.

### Assignment of Error III

■ Appellant claims that the trial court erred in denying his motion to suppress his vehicle, the Chevrolet Blazer. We disagree.

Appellant's vehicle was seized after appellant revealed its location during the interrogation associated with the misuse of the felony-investigation subpoena statute. Appellant argues that his disclosure was involuntary given the nature of the interrogation and that therefore the vehicle should have been suppressed pursuant to the exclusionary rule:

██ "The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. By refusing to admit evidence gained as a result of such conduct, the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of an accused." *Michigan v. Tucker* (1974), 417 U.S. 433, 447, 94 S.Ct. 2357, 2365, 41 L.Ed.2d 182, 194.

By memorandum filed July 15, 1996, the trial court found that appellant's disclosure was involuntary but found that the doctrine of inevitable discovery applied:

"The question then remains was the discovery of the location of the vehicle inevitable? The investigation on the drug sale and fleeing and eluding in the Blazer was well under way at the time of the disclosure by defendant. Jodi West and Scott Lewis had provided information about defendant and his friends and the sheriff's office had the ID number of the subject vehicle. Being at one of defendant's friend's home, its location was only a matter of a short while."

In revisiting the same issue, the trial court once again denied the motion to suppress the vehicle, stating as follows:

"Finally, with respect to the question of the suppression of the evidence relating to the vehicle, allegedly driven by the defendant, the court finds said motion to be without merit. Before the Blazer was located the focus of the sheriff's offices investigation was on the defendant and his Blazer. The Blazer was parked on a street in Whitehall in clear view of anyone who might approach it. The sheriff's office was enthusiastically pursuing this case as it considered the case to be of major importance and it was reasonably, if not highly, probable that the vehicle would have been located even without the assistance of the defendant."

██ The inevitable-discovery exception to the exclusionary rule states that "illegally obtained evidence is properly admitted in a trial court proceeding once it is established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation." *State v. Perkins* (1985), 18 Ohio St.3d 193, 196, 18 OBR 259, 261, 480 N.E.2d 763, 766–767. In order to have evidence admitted under this exception, the state must demonstrate the following:

"(1) a reasonable probability that the evidence would have been discovered by lawful means but for the police misconduct, (2) that the police possessed the leads making the discovery inevitable at the time of the misconduct, and (3) that the police were actively pursuing an alternate line of investigation prior to the

misconduct." *State v. Wilson* (1994), 97 Ohio App.3d 333, 336, 646 N.E.2d 863, 865.

Captain Dennis Carley of the Fairfield County Sheriff's Office testified that based upon information he received from one Jody West, he determined that appellant owned a mid–1980 Blazer like the one they were looking for. Several law enforcement officers drove by appellant's house looking for the vehicle. Upon serving appellant with the subpoena, Captain Carley identified appellant as the person driving the vehicle involved in the drug buy. The vehicle was found in Whitehall, about five to ten minutes away from appellant's house.

Based upon the evidence presented, we concur with the trial court's conclusions and find that the trial court did not err in denying the motion to suppress the vehicle.

Assignment of Error III is overruled.

## CROSS–ASSIGNMENT OF ERROR I

Based upon our decision in Assignments of Error I and II, this assignment of error is moot.

The judgment of the Court of Common Pleas of Fairfield County, Ohio is hereby affirmed in part and reversed in part.

*Judgment affirmed in part*
*and reversed in part.*

WILLIAM B. HOFFMAN and JOHN W. WISE, JJ. concur.