DECISION AND JUDGMENT ENTRY
This is an appeal from an Athens County Common Pleas Court judgment of conviction and sentence. A jury found Joseph Westwood, defendant below and appellant herein, guilty of marihuana possession in violation of R.C. 2925.11(A). The following errors are assigned for our review:[1]
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION FOR A MISTRIAL AFTER AN UNADMITTED EXHIBIT WAS REVIEWED BY THE JURY."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29 ON THE GROUNDS THAT THE STATE FAILED TO PROVE KNOWING POSSESSION OF THE MARIHUANA."
A brief summary of the facts pertinent to this appeal is as follows. On March 22, 2000, Athens County Sheriff's Deputies executed a search warrant at appellant's 298 Adams Street residence in Nelsonville. During the search officers found several containers of leafy green vegetation, later identified as marihuana, in appellant's bedroom. The Athens County Grand Jury thereafter returned an indictment charging him with one count of marihuana possession in violation of R.C. 2925.11(A). Appellant pled not guilty and the matter came on for a jury trial on May 4, 2001.
Prior to the presentation of evidence, appellant made an oral motionin limine. Appellant sought to exclude any reference to matters regarding the issuance of the search warrant. Specifically, appellant sought to suppress testimony concerning an alleged drug sale and information allegedly related to deputies by an unidentified informant. The prosecution agreed that it would not refer to these matters during the trial and that its witnesses would state "that they were acting pursuant to a warrant" without explanation as to how that warrant came to be issued.
The prosecution called several witnesses who recounted the search of appellant's residence and their discovery of marihuana. Deputy Darell Cogar also testified that, while he detained the family in the residence's living room during the search, appellant freely admitted that he used marihuana. In fact, appellant freely admitted that Sheriff's Deputies missed his "stash" (a 3.5 gram bag) during the search and that it was still in a dresser when he returned from jail the next morning. The defense, however, denied that the marihuana found in the residence actually belonged to appellant. Appellant apparently suggested that the authorities brought several large bags into the house but would not let anyone see what was inside. Appellant thus asserted that law enforcement officers may have been responsible for the presence of the marihuana.
After the trial concluded and the case was given to the jury, the jury sent the following inquiry to the trial court:
 "Evidence Bag Item #7 Indicated on label that #7 bag was purchased prior to execution of search warrant. Should we disregard or `try' to disregard as evidence. Is this the prompt (the buying of the 35 grams) that gave reason for the search warrant?"
Once the trial court received this message, the court and counsel discovered that the evidence that the parties' agreed to be excluded from the evidence was mistakenly given to the jury. A brief discussion "on the record" ensued and appellant moved for a mistrial. The court denied the motion and instructed the jury (1) not to consider that exhibit for "any purpose"; and (2) not to draw any inference from the exhibit or to speculate as to the reason behind the court's instruction to disregard the evidence.
The jury continued its deliberations and ultimately returned a guilty verdict.
On May 29, 2001, appellant filed a Crim.R. 29(A) motion for judgment of acquittal and argued that insufficient evidence existed on which to justify the verdict and that he was unduly prejudiced by the evidence mistakenly given to the jury. The trial court denied the motion. On August 30, 2001, the trial court sentenced appellant to five years of community control sanctions to include, among other things, forty-five (45) days at the Southeastern Ohio Regional Jail. This appeal followed.
 I
We consider the assignments of error in reverse order. Appellant argues in his second assignment of error that the trial court erred by denying his Crim.R. 29(A) motion for judgment of acquittal. We disagree.
Our analysis begins from the premise that judgment of acquittal under this rule should only be entered if the evidence is insufficient to sustain a conviction for the charged offense. See State v. Daugherty
(Jun. 28, 2001), Ross App. No. 00CA2572, unreported; State v. Meadows
(Feb. 12, 2001), Scioto App. No. 99CA2651, unreported. Trial courts should not enter judgments of acquittal if, after full consideration of the evidence, reasonable minds can reach different conclusions as to whether the prosecution has proven each essential element of the offense beyond a reasonable doubt. See State v. Bridgeman (1978),55 Ohio St.2d 261, 381 N.E.2d 184, at the syllabus.
When a reviewing court determines whether a trial court erred in overruling a motion for acquittal, an appellate court must focus on the sufficiency of the evidence. See e.g. State v. Carter (1995),72 Ohio St.3d 545, 553, 651 N.E.2d 965, 974; State v. Jenks (1991),61 Ohio St.3d 259, 273, 574 N.E.2d 492, 503. When a court of review considers the sufficiency of the evidence, our inquiry is directed to the adequacy of the evidence; that is, whether the evidence, if believed, reasonably supports a finding of guilt beyond a reasonable doubt. SeeJenks, supra at 273, 574 N.E.2d at 503; State v. Thompkins (1997),78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546. Thus, our standard of review is whether, after viewing the evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. See Jenks, supra at 273, 574 N.E.2d at 503;State v. Jones (2000), 90 Ohio St.3d 403, 417, 739 N.E.2d 300, 315; Statev. Dennis (1997), 79 Ohio St.3d 421, 430, 683 N.E.2d 1096, 1105; alsosee Jackson v. Virginia (1979), 443 U.S. 307, 319, 61 L.E.2d 560,573-574, 99 S.Ct. 2781, 2789. Further, a reviewing court must not assess whether the prosecution's evidence is credible, but whether, if credible, the evidence supports a conviction. See Thompkins, supra at 390, 678 N.E.2d at 549 (Cook, J. Concurring); also see Daugherty,supra. In the instant case, we find sufficient evidence to support appellant's conviction.
R.C. 2925.11(A) prohibits the knowing possession of a controlled substance. The evidence adduced below reveals that authorities found more than three hundred grams of marihuana in appellant's home. This evidence supports appellant's conviction. Appellant counter-argues that, although various containers of the drug were found in his home, that fact alone did not establish that he "knowingly" possessed the drug. We are not persuaded.
We agree with appellant that possession of a controlled substance cannot be inferred solely from access to the drug through the ownership or the occupation of the premises on which a drug is found, see R.C.2925.01(K). Possession, however, may be established through other circumstantial evidence. See State v. Hooks (Sep. 18, 2000), Warren App. No. CA2000-01-06, unreported; State v. Cassell (Aug. 23, 1999), Clinton App. No. CA98-06-018, unreported; State v. Fugate (Oct. 2, 1998), Scioto App. No. 97CA2546, unreported. Further, possession can be either actual or constructive. See State v. Butler (1989), 42 Ohio St.3d 174, 176,538 N.E.2d 98, 100-101. Constructive possession exists when an individual exercises dominion or control over an item even if the individual does not have the item in his immediate possession. State v. Hankerson
(1982), 70 Ohio St.2d 87, 434 N.E.2d 1362, at the syllabus; State v.Wolery (1976), 46 Ohio St.2d 316, 329, 348 N.E.2d 351, 360.
The evidence adduced below established that appellant had more than mere access to the marihuana. The drugs were found in appellant's bedroom. The jury could reasonably infer that he had control of the items located in that room. We also note that the authorities entered appellant's residence in the morning when he was asleep in that bedroom. Finally, appellant admitted to Deputy Cogar that he smoked marihuana. This evidence constitutes sufficient evidence on which the jury could infer that the marihuana belonged to appellant and that he had knowing (constructive) possession of the drugs. Therefore, we find no error in the trial court's decision to deny his Crim.R. 29 motion for judgment of acquittal.Accordingly, we overrule appellant's second assignment of error.
 II
We now turn to appellant's first assignment of error. Appellant argues that the trial court erred in denying his motion for a mistrial. After a thorough review of this issue, we agree with appellant.
Initially, we note that trial courts enjoy broad discretion in ruling on motions for mistrial. State v. Iacona (2001), 93 Ohio St.3d 83, 100,752 N.E.2d 937, 953; State v. Sage (1987), 31 Ohio St.3d 173, 182,510 N.E.2d 343, 349-350. Thus, trial court decisions relating to motions for mistrial will not be reversed absent an abuse of discretion. SeeState v. Swain (Jan. 23, 2002), Ross App. No. 01CA2591, unreported; Statev. Pizzillo (Jan. 17, 2002), Carroll App. No. 746, unreported; State v.Dunham (Aug. 13, 2001), Butler App. No. CA2000-11-224, unreported. An abuse of discretion is more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. State v. Clark (1994), 71 Ohio St.3d 466, 470,644 N.E.2d 331, 335; State v. Moreland (1990), 50 Ohio St.3d 58, 61,552 N.E.2d 894, 898; State v. Adams (1980), 62 Ohio St.2d 151, 157,404 N.E.2d 144, 149. With this in mind, we turn our attention to the particular facts and circumstances of the case sub judice.
There is no dispute in this case that evidence in question should not have been given to the jury. However, the exhibit was, in fact, mistakenly given to the jury. Although the specific facts surrounding the collection of this evidence are not entirely clear from the record, it appears that the bag of marihuana was purchased from appellant or from someone else at appellant's residence. Defense counsel argued at the hearing on the motion in limine that this particular evidence should be excluded because (1) the charges against appellant stemmed from the raid of his home on March 22nd rather than the prior alleged drug purchase, (2) the name of an unidentified informant was not revealed and (3) some "tape" was unable "to be understood."
The prosecution agreed to restrict the testimony of its witnesses to the execution of the search warrant rather than the underlying reasons for the warrant's issuance. Furthermore, we note that during the trial an objection was raised, and apparently sustained, when one of the deputies (Jack Taylor) began to describe the events that led to the warrant's issuance. After the trial and during the jury deliberations, the jury received the "exhibit." Obviously, defense counsel could not counteract any of the negative effects of that evidence through the presentation of additional evidence or the cross-examination of witnesses. Thus, the central issue in this appeal is whether the trial court should have granted appellant's request for a mistrial.
Ohio law is not particularly instructive on the subject of unadmitted evidence that is mistakenly submitted to a jury.[2] The Ohio Supreme Court has touched on this issue, but their opinions provide little guidance. In State v. Cooper (1977), 52 Ohio St.2d 163, 180,370 N.E.2d 725, 736, the Court rejected the argument that reversible error occurred when unadmitted exhibits found their way into the jury room because (1) the record did not definitively show that the exhibits were actually given to the jury and (2) even if they were, any error was harmless in light of the cumulative nature of the evidence in relation to the other evidence adduced at trial. Similarly, in State v. Grant
(1993), 67 Ohio St.3d 465, 483, 620 N.E.2d 50, 69, the Court held that no error occurred when certain scientific slides, not admitted into evidence, may have been taken into the jury room. The court noted that even if the evidence had appeared in the jury room, the evidence was repetitive of other evidence introduced at trial.
These cases are distinguishable from the present case. Here, there is no question that the jury viewed the unadmitted evidence (the bag of marihuana). We again note that the jury sent a note to the trial court judge to inquire about the evidence's consideration. Moreover, this exhibit was not repetitive of any other evidence adduced at trial. Also, the parties explicitly agreed that no evidence would be presented concerning the alleged purchase of that marihuana. The court directed one witness to refrain from describing the circumstances under which the search warrant was issued.
This issue has also been addressed by several Ohio appellate courts. In fact, this Court has considered this issue on two occasions. First, inState v. Seymour (Nov. 9, 1993), Pickaway App. No. 90CA8, unreported, we held that the presence of unadmitted exhibits in the jury room did not mandate a reversal because (1) overwhelming evidence of guilt existed, and (2) those exhibits were cumulative of other evidence and therefore harmless. Later, in State v. Wheeler (Mar. 4, 1997), Washington App. No. 96CA26, unreported, we rejected an argument that sending unadmitted exhibits to the jury room constituted reversible error because defense counsel consented to the procedure. Our colleagues in the Eighth Appellate District confronted this issue in State v. Allen (Apr. 7, 1983), Cuyahoga App. Nos. 43687 43688, unreported, but found no error because the jury had not actually viewed the unadmitted exhibits.
Here again, these cases are factually distinguishable from the casesub judice and, thus, provide little guidance. In the instant case the jury obviously viewed the exhibit. Appellant's counsel did not consent to the exhibit being sent to the jury room. Also, the exhibit was not cumulative of other evidence adduced at trial. Further, we believe that proof of guilt was not so great that we can comfortably say that its submission to the jury constituted harmless error. While the evidence was sufficient to get the case to the jury, the evidence was less than overwhelming. Therefore, the error in submitting this evidence to the jury cannot be easily dismissed under guidance from Ohio case law.[3]
We now turn to other jurisdictions for further guidance. Federal law on this point is quite clear. The jury room must be kept free of evidence not received during trial and its presence, if prejudicial, will vitiate the verdict. See e.g. United States v. Barnes (C.A.4 1984), 747 F.2d 246,250; United States v. Hans (C.A.3 1984), 738 F.2d 88, 92; Virgin Islandsv. Joseph (C.A.3 1982), 685 F.2d 857, 863-864; Dallago v. United States
(D.C.C.A. 1969), 427 F.2d 546, 553. Ranking high among contaminants are extra-judicial facts associating the accused with criminality not involved in that specific trial. Dallago, supra at 553-554; also seeUnited States v. Hernandez-Escarsega (C.A.9 1989), 886 F.2d 1560, 1580. Furthermore, a presumption of prejudice generally arises when a jury is exposed to exhibits that were not admitted into evidence and the government has the burden to show that the jury was not prejudiced.Barnes, supra at 250-251; United States v. Brooks (C.A.4 1992),957 F.2d 1138, 1142; United States v. Greene (C.A.4 1987), 834 F.2d 86,88. It matters not that the foreign matter invades the jury sanctuary by mistake or accident, so long as the accused is not at fault. Dallago,supra at 554.
The earliest case that we have located that discusses this scenario involved a securities fraud prosecution. In Dallago, a previous, unrelated SEC suspension order was mistakenly delivered to the jury room. The Court held that in a case involving fraud and misrepresentation, any hint that the defendant might have been responsible for other false security filings impermissibly weighted the scale in favor of the government. 427 F.2d at 560. This error was of such magnitude and consequence as to mandate a new trial. Id.
Similarly, in United States v. Greene (C.A.4 1987), 834 F.2d 86, the Court affirmed the trial court's grant of a motion for a mistrial in a prosecution for conspiracy to make false claims to the Department of Defense. Unadmitted evidence was delivered to the jury showing additional false claims in excess of $900,000 above and beyond that for which appellant was being prosecuted. This fact was sufficient to warrant a mistrial. Id. at 88-89.[4]
In United States v. Shafer (C.A.5 1972), 455 F.2d 1167, the court reversed a conviction for conspiracy to import marihuana when numerous exhibits, not admitted into evidence, were delivered to the jury room. The court held that the weight of the evidence in that case was not so overwhelming that those particular exhibits could be considered non-prejudicial. Id. at 1170.
In Virgin Islands v. Joseph, 685 F.2d at 865, the Court held that the defendant was denied a fair trial when unadmitted documents (including a written confession) were mistakenly delivered to the jury. The court reached this conclusion despite what the Court termed "overwhelming" evidence of appellant's guilt. Id. at 860. Federal case law is replete with other examples in which the submission of unadmitted exhibits to the jury was deemed error that deprived the defendant of a fair trial. Seee.g. Barnes, supra at 250-251 (tapes of phone calls, transcripts of those tapes and an affidavit inadvertently sent to the jury room made it highly unlikely that appellant received a fair trial); United States v. Hans
(C.A.3 1984), 738 F.2d 88, 92-93 (error to allow jury to view windbreakers, similar to those used by bank robbers, when the windbreakers were not admitted into evidence).
Not every instance of juries viewing unadmitted exhibits required a reversal of the conviction, however. Some cases have followed the pattern of Ohio cases and allowed the conviction to stand when the prejudicial effect of that mistake was not immediately apparent. See e.g.Hernandez-Escarsega, supra at 1581 (notes prepared by government witness and improperly sent to the jury did not warrant mistrial because it was not entirely clear that any members of the jury actually saw the notes or were aware of their contents); United States v. Gonzales (C.A.5 1997),121 F.3d 928, 944-945 (allowing jurors to inspect a machine gun which was produced at trial, but not admitted into evidence, was harmless when the jury heard extensive testimony at trial concerning that exhibit);Blackmon v. United States (C.A.6 1973), 474 F.2d 1125, 1127 (submitting an unadmitted map used for identification purposes in bank robbery trial was not prejudicial when defense counsel did not object to the trial court's decision to give the map to the jury — no reason existed to believe that the map should not have been admitted into evidence and nothing depicted therein that could have prejudiced the rights of the defendant); United States v. Yoppolo (C.A.6 1970), 435 F.2d 625, 626-627
(no error in sending grand jury transcripts not formally admitted into evidence to the jury room because those exhibits were extensively used on cross-examination and the jurors were already well aware of their contents).
An examination of case law from other states shows the same type of treatment in deciding these issues. Last year, in Merritt v. Maryland
(Md.App. 2001), 785 A.2d 756, an application for a search warrant that was not admitted into evidence made its way to the jury room. This document contained (1) evidence accusing appellant of other criminal acts, (2) improper opinion evidence accusing appellant of murder and (3) improper evidence bolstering the credibility of an investigator. Id. at 766. Despite what the Court characterized as "overpowering evidence" of guilt, the statements in the unadmitted application were deemed so prejudicial as to warrant a new trial. Id. at 767.
In People v. Long (Ill.App. 2000), 738 N.E.2d 216, an unadmitted police report was delivered to the jury. The Court noted that the statements contained in that report were so prejudicial that a reversal was mandated. Id. at 222-223.[5] Likewise, in People v. Bouton (N.Y.App. 1980), 428 N.Y.S.2d 218, unadmitted exhibits, which included a confession that referenced other uncharged criminal activity, were mistakenly delivered to the jury. The Court found such evidence inherently prejudicial and its presence warranted a new trial. Id. at 221-22.
In other cases, however, courts have held that the submission of unadmitted exhibits to the jury did not warrant a reversal when, as with the Ohio and federal cases discussed supra, the defendant suffered no prejudice. See e.g. State v. Hadley (La.App. 1996), 686 So.2d 149, 155-156
(an unadmitted written statement by rape counselor that the defendant had "done this [rape] before" inadvertently allowed into the jury room was not sufficient to warrant a new trial because jurors only had the evidence for a few minutes before the bailiff collected it and there was no indication that anyone even had time to read it); Commonwealth v.Hoke (Pa.Sup. 1989), 552 A.2d 1099, 1102 (it was error to allow a diagram, used for illustrative purposes but not received into evidence, into jury room. That error did not constitute prejudicial error, however, the court noted that the evidence was only in the jury room for a few minutes and, in any event, the jury had a clear view of the diagram during the trial);[6] Bottoson v. Florida (Fla. 1984), 443 So.2d 962,966 (although it was error to allow papers identified during sentencing, but not admitted into evidence, into the jury room, the error was not prejudicial because those papers merely duplicated evidence already properly presented to the jury); State v. Sumpter (Mo.App. 1983),655 S.W.2d 726, 729 (while error to submit an unadmitted xeroxed copy of another suspect's driver's license to the jury during deliberation, that error was harmless because it was unclear how another person's license could prejudice the jury against appellant and, in any event, testimony concerning that license had already been given at trial); Edwards v.Oklahoma (Okla.App. 1981), 637 P.2d 866, 877 (unadmitted exhibits wrongly delivered to jury did not warrant a new trial when witnesses had given extensive testimony about those exhibits); People v. Keeth (Mich.App. 1975), 234 N.W.2d 717, 719-720 (although improper to send unadmitted handcuffs to the jury during deliberations in a rape trial, those handcuffs did not contribute to the defendant's conviction — the defendant admitted that he used handcuffs and there was ample testimony at trial that the actual handcuffs that he used were never found).
What emerges from these cases is a general consensus that, if unadmitted exhibits are mistakenly given to the jury during deliberation, and if the defendant has suffered prejudice as a result thereof, the conviction cannot stand. We need not address whether that prejudice is presumed, as it is in federal court, or whether the onus is on the appellant to affirmatively demonstrate that he was prejudiced. In either event, we believe that the appellant was prejudice in the casesub judice.[7]
In the case at bar, the unadmitted evidence submitted to the jury consisted of a bag of marihuana, allegedly purchased from either appellant or from someone else at his home. Our concern is that the jury may have allowed that evidence, which involved drug trafficking, to influence its deliberations on the possession charge. As we previously noted, the greatest danger of prejudice lies in a jury viewing unadmitted exhibits that link the defendant to other criminal acts unrelated to the particular issues involved in the trial. See e.g. Dallago, supra at 553-554; Hernandez-Escarsega, supra at 1580; Bouton, supra at 221-222. The evidence at issue in the instant case gave the impression that appellant was involved with more than mere marihuana possession; rather, the evidence suggested that appellant also trafficked in drugs. This evidence, we believe, could have influenced the jury's decision on the possession charge.
Moreover, we find that none of the indicia of harmless error present in the previously discussed cases are present in the instant case. There is no question that the jury viewed this evidence. In fact, the jury sent a question to the court concerning the exhibit's origins. The bag of marihuana also does not duplicate any other evidence adduced at trial. Indeed, as discussed earlier, the parties agreed, during the hearing on the motion in limine, that no evidence concerning the alleged drug purchase would be presented at trial. We have found no other such evidence in our review of the transcript. We also cannot dismiss this error as being harmless error.
Thus, we conclude that appellant suffered prejudice from the jury's consideration of the unadmitted exhibit. Accordingly, a mistrial should have been declared and we find, albeit reluctantly, that the trial court abused its discretion in overruling appellant's motion for a mistrial.
We readily concede that the trial court attempted to offset the exhibit's negative impact by instructing the jury to "not consider it for any purpose," "draw no inferences" from it and "not speculate as to why this instruction [was] being given." Jurors are presumed to follow curative instructions to disregard evidence. See State v. Johnson
(1994), 71 Ohio St.3d 332, 340, 643 N.E.2d 1098, 1106; State v. Zuern
(1987), 32 Ohio St.3d 56, 61, 512 N.E.2d 585, 590. However, curative instructions may not always sufficiently eliminate the prejudicial impact of highly inflammatory evidence. See State v. Davis (1975),44 Ohio App.2d 335, 344, 338 N.E.2d 793, 801; State v. Green (Mar. 18, 1999), Franklin App. No. 98AP-633, unreported; State v. Sinkfield (Oct. 2, 1998), Montgomery App. No. 16277, unreported; also see e.g. State v.Talbert (1986), 33 Ohio App.3d 282, 285-286, 515 N.E.2d 968, 971-972.
The presumption that curative instructions remedy a mistake can be rebutted by showing that the evidence could not have been ignored and that serious prejudice likely occurred. United States v.Gonzales-Vazquez (C.A.1 2000), 219 F.3d 37, 48; United States v.Rullan-Rivera (C.A.1 1995), 60 F.3d 16, 18; also see Greer v. Miller
(1987), 483 U.S. 756, 766, 97 L.Ed.2d 618, 630-631, 107 S.Ct. 3102,3109, at fn. 8 (courts generally presume that a jury follows instructions to disregard evidence unless there is an overwhelming probability that the jury will be unable to follow the instruction and a strong likelihood that the evidence would be devastating to the defendant); Bruton v.United States (1968), 391 U.S. 123, 135, 20 L.Ed.2d 476, 484-485,88 S.Ct. 1620, 1627 (although a jury is ordinarily expected to follow instructions to disregard evidence, there are some cases in which the risk that the jury will not, or cannot, follow those instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored). We believe the case sub judice is one of those rare instances when curative instructions were insufficient to eliminate the prejudice inflicted by inflammatory evidence.
Again, less that overwhelming evidence established possession in this case. The Ohio Supreme Court has held that when a conviction is grounded on circumstantial evidence which is "far from overwhelming," it is impossible to ascertain whether the same verdict might have been rendered but for the evidentiary error in question. See Johnson, supra at 341,643 N.E.2d at 1106. Although we have found that sufficient evidence existed to survive a motion for judgment for acquittal and get to the jury, we are not persuaded that the evidence was so overwhelming that the jury would have convicted him without having viewed the unadmitted and prejudicial evidence. In this regard, of concern to us is the jury's note delivered to the trial court during the jury's deliberations. The jury expressly asked the court whether it should "disregard or `try' to disregard" this evidence. (Emphasis added.) The jury's use of the word "try," set off in quotation marks, suggests that disregarding that particular evidence during their deliberations was nearly impossible. Thus, we cannot rely on the presumption that a curative instruction remedied the problem.
Finally, we note that we do not easily reach this conclusion. Mistrials should not be granted because of some minor error or irregularity. Statev. Nichols (1993), 85 Ohio App.3d 65, 69, 619 N.E.2d 80, 83; State v.Reynolds (1988), 49 Ohio App.3d 27, 33, 550 N.E.2d 490, 497; State v.Holland (Nov. 15, 2001), Allen App. No. 1-2000-88, unreported. Rather, mistrials should be declared only when the ends of justice so require and a fair trial is no longer possible. See State v. Franklin (1991),62 Ohio St.3d 118, 127, 580 N.E.2d 1, 9, citing Arizona v. Washington
(1978), 434 U.S. 497, 505-506, 54 L.Ed.2d 717, 728-729, 98 S.Ct. 824,830-831; Illinois v. Somerville (1973), 410 U.S. 458, 462-463,35 L.Ed.2d 425, 429-430, 93 S.Ct. 1066, 1069-1070. Given the absence of overwhelming evidence of possession in this case, and considering the prejudicial nature of the evidence mistakenly delivered to the jury, we believe the interests of justice would have best been served by granting appellant's motion for a mistrial. Accordingly, we hereby sustain appellant's first assignment of error.[8]
Having sustained appellant's first assignment of error, we hereby reverse the trial court's judgment. We remand this case for further proceedings consistent with this opinion, which may include a new trial.
JUDGMENT REVERSED AND CAUSE REMANDED FOR FURTHER PROCEEDINGS CONSISTENTWITH THIS OPINION.
Kline, J. Evans, J. Concur in Judgment Opinion.
[1] We note that the assignments of error set forth in the brief's initial statement of "assignments of error" are somewhat different than the assignments of error set out in the body of his argument. For purposes of our review, however, we will review the assignments of error designated in the statement set forth on page three of the brief rather than the sub-headings of the argument.
[2] We note that neither appellant nor appellee cited any cases that involve this specific issue.
[3] We are aware of the decision in State v. Juniper (1998),130 Ohio App.3d 219, 225-226, 719 N.E.2d 1022, 1027-1028, when our colleagues in the Fifth Appellate District held that a new trial was warranted when the defendants unadmitted statement was mistakenly submitted to the jury. That case is distinguishable from the case at bar, however, because the statement was previously suppressed as an involuntary confession. Here, the record is unclear why reference to the marijuana allegedly purchased at the appellant's home was to be excluded from the evidence. The trial court did not declare that the evidence was obtained in violation of appellant's constitutional guarantee and we cannot make that determination from the sparse facts in the record. Thus, we do not consider Juniper as being dispositive of this issue.
[4] The Dallago and Greene cases are particularly significant because, like the case sub judice, they both involve unadmitted evidence of other criminal acts being sent to the jury room.
[5] The Long case differs from the case sub judice because the police report was purposely delivered to the jury by the trial court rather than the report making its way to the jury by accident or inadvertence. Nevertheless, the principle remains the same — the unadmitted evidence was highly prejudicial and required a reversal of the conviction.
[6] For a more thorough discussion of the facts in the Hoke case, see the trial court's analysis of the motion for mistrial in Commonwealth v.Hoke (1988), 48 Pa. D. C. Rep.3d 307, 319.
[7] Our colleagues in the Eighth District have opined that if the slightest possibility exists of harm from the jury viewing unadmitted evidence, reversal is mandatory. See State v. Allen (Apr. 7, 1983), Cuyahoga App. Nos. 43687 43688, unreported citing United States v.Marx (C.A.10 1973), 485 F.2d 1179. We need not and do not choose to adopt that particular standard today.
[8] We emphasize that nothing in this opinion should be misconstrued as casting aspersions on either the parties or the trial court. The record in this case indicates that the evidence was mistakenly delivered to the jury. Nothing suggests any misconduct. The trial court attempted to balance appellant's rights against those of the people of the State of Ohio. We simply hold that, in light of the particular facts and circumstances of this case, the scale must tip in favor of appellant on this occasion.